C. Doing business at Hampton Crown Plaza Hotel and Vanessa R. Peter, Human Resources. Ms. Deutsch, for the amicus curiae. Mr. Morales, for the appellees. Good morning. Good morning, and may it please the Court. In crafting OSHA in 1970, Congress told whistleblowing employees that they have a right not to be discriminated against for reporting health and safety violations. And although no express private remedy was provided, there is ample evidence in the statute's text and structure that Congress wanted employees to be able to directly vindicate that right, that linchpin right, in federal court. Taylor's holding that the optional secretary suit was meant to be the exclusive remedy ignores all statutory signs to the contrary and should be rejected. First, 11C1 has a critical textual focus on creating rights for a protected class of actors, and nothing more was necessary in 1970, which was the judicial heyday for implying private rights of action. But we have more in the statute. Going to the next provision, C2, the permissive may introduces the secretary suit, which shows that it cannot be the exclusive remedy, as employees need not notify the secretary at all. Of course, they can do nothing, but the may, particularly given the backdrop at the time, means that employees can bypass the secretary and go directly to court. At most, as the Department of Labor said in its amicus brief filed in the Taylor case, it gives the secretary an optional first dibs to help make law in key cases where it chooses to deploy agency resources. Third, C3, the notice provision would be an empty formality, unless it is there to give an employee the alert needed to ready private suit in the event of secretarial inaction. Fourth, placement of the provision within the overall judicial review section contemplates existence of a private right. As the secretary noted in 1980, judicial review of secretarial inaction under this section is unlikely. They argued that it was presumptively unreviewable in 2001 in the Wood case. I know it's an open question in this circuit, but their argument then, which in 1980 I think holds today, that allowing a private right is the only guarantee that an employee would get judicial review of a violation of elegancy under this statute. Are you aware of any statute where a cause of action to enforce retaliation was implied when there's no cause of action to enforce the substantive protections of the statute? I see there's no private cause of action to enforce the substantive protections. All the same, Title VII and the scores of discrimination statutes, and then retaliation was implied in addition to that. Well, Title VII is a statute that deals only with discrimination and retaliation. This is a little different insofar as it's a civil rights provision of an overall regulatory statute where the anti-discrimination right is a linchpin that protects the employees who would be reluctant to come forward. Congress didn't want a private right of action to enforce the substantive standards. Right, and it makes sense because there's a comprehensive administrative enforcement scheme for those substantive standards that Congress didn't want private parties interfering with, and the Secretary has the comparative advantage and expertise in setting those standards, enforcing them. There's a mandatory exhaustion requirement for challenges to citations. Congress has recently thought that as an adjunct to that process, the Secretary can also look and see if someone was retaliated against for reporting, and that's why you have this sort of adjunct process going to the Secretary here. I think the initial version maybe could be read that way, where there was going to be a full review and record hearing in the agency for this, but I think the legislative progression here, far from narrowing the employees' right, actually narrowed the agency's right, and Congress recognized that the courts were better positioned to adjudicate these claims. And the Secretary really has an optional role in this part of the statute, which is not to say that it's a lesser part. It's just that Congress recognized there were scarce enough resources to just do the key function of the agency, which is the health and safety violations, and they're more behind now than they were in 1980, when the Secretary said the private right was a necessary supplement. Is there a state law cause of action that someone could bring when their employer retaliates against them? The courts are divided. There aren't any circuit court opinions on this. The district courts I've seen are divided, and it comes up in removal cases bouncing around. Some people say it's preempted, and some people say that state law, constructive discharge, public policy causes of action, could fill that role, particularly given the court's interpretation so far that there's no private right. And whether D.C. law affords anything? I do not know the answer to that question. So, insofar as the Taylor decision, you know, and I recognize that we're asking you to create a circuit split by ruling not only against Taylor, but all the many courts that have We do that on occasion. Wouldn't we follow Taylor? And, you know, I was watching a horror movie with my son, and he said, you get the queen, you get the hive. So if we get Taylor, I think we get everything else. But the problem is, why would we, and we're willing to create circuit splits, but why would we, here in the sweep of Supreme Court law, as you're well aware and acknowledge correctly, is not to leave these kinds of questions to Congress? And at a big-picture level, that's obviously the problem you're facing here, at least. We don't usually create rights of action anymore. So how can we get around that bedrock's-too-strong-but-basic principle that I think's in the law now? Well, I think a few things. First of all, the fact that this is a 1970 statute matters very much, and Cannon, Sandoval, Morse all make that clear. And Morse is a 1996 case where they inferred a private right of action under Section 10 of the Voting Rights Act. So it's still possible. Indiana Protection Advocate Service was interstate-sized. The Seventh Circuit en banc case, where they had a private right of action in 2010, 2011, I think. So the fact that courts are not regularly in the business of implying rights of action these days doesn't mean it's impossible. It just means you have to pass the test. Do you know if Congress has considered, since in the last several decades, whether to put a private right of action? They've considered a few things. So my understanding is that there has been some request to put a private right of action in. There have also been two failed amendments introduced in 1995 and 1997 by Senator Hutchinson to expressly say that the Secretary's suit was the exclusive remedy and that the 30-day deadline is non-tollable under the regulations of the Department of Labor tolls. So the inaction, which you can't get much from in all events, goes both ways. But it at least shows that Congress is aware and nothing's happened. Yes, but something important happened in 1970, which was bicameral passage and signing by the President. And that matters a lot more than Congress doing nothing going forward. You rely a lot on what the world was like at the time the statute was passed and the a regulatory statute is different. It's a regulatory statute that then has this retaliation provision in it. And again, the canon world rules seem to involve forms of employment discrimination, not regulatory in the way that this is regulatory. Right. Is there an example of a regulatory scheme in the canon era in which rights of action were applied? The closest cognate is the Federal Mine Safety Act. And my apologies that we didn't brief this. It was something that I, during anticipating this question, during oral argument. And there is not an implied right of action under that statute. There's a district court case that goes into it. But tellingly... Not implied right of action for retaliation. No, but it has a similar retaliation prohibition, but it mirrors the initial version of the Act in the Senate where there's full hearing and review in the agency. And it also has provisions for employees to challenge the result of that agency review. So it was a much more comprehensive enforcement scheme. So an important, I think, difference in this statute and what separates it from Title VII as well as the health and safety provisions within OSHA is that there is no comprehensive administrative scheme at all to protect this linchpin fulcrum right. It's basically an option to ask the secretary for help. And otherwise the right remains unvindicated. And in that day and age where the rights language was itself enough for courts to create a remedy, that will do it. It's not only that it's regulatory, but the employer-employee relationship, in this separate part from race and gender discrimination, in this type of manner was still something that was heavily regulated by states. So why isn't the easier assumption that not only Congress wanted to imply a right of action here, not that Congress intended a right of action here, but that they thought if this didn't work you would just resort to state court? That's definitely a possibility. The legislative history is largely silent on this provision. The one specific mention is page 57 of that big compilation where it's in reference to the House version. And the House version was actually not an adjudication at all. It was a prosecutorial provision where there were fines and possibilities of even prohibition. And there one of the members said that employees would be reluctant to come forward. State, I don't have a ready answer to why Congress wouldn't assume that constructive discharge or other state actions were there. But I do know that this language was drafted at a time. Allen was decided in 69. Sullivan was decided in 69 or 70. There was a shared understanding between Congress and the courts that dual enforcement for remedial schemes was permissible and made sense. And if anything, the fact that Congress shifted the Secretary's role to this sort of supplement conduit to the courts shows that Congress thought the federal courts should be involved, specified the sorts of remedies that would be available, and recognized that there is a public-private hybrid going on here because of the provision situation in a regulatory scheme. So that in cases where the Secretary thought there would be high impact and want to make the law and give a larger signal to an entire industry or sector, they could get involved. And in other cases which deal with a one-off claim, the employee would nonetheless be able to vindicate that right without wasting agency resources. And the Secretary made that argument in 1980, and they suggested as much in their 2001 briefing would that they engage in these sort of policymaking exercises before proceeding to court. The employee role in this statute is essential, and they have duties and responsibilities under this statute. It's arguably an obligation for them to come forward and report, and it begs reason that Congress would place such a heavy load on them without ensuring that they were protected for doing something that they also recognized was essential given how few the inspectors were. So in 1980, the backlog of cases was one-third. Now the backlog is two-third of cases, and there's a distinction because they have more complaints than cases, so only about one-third of the complaints turn into cases that are evened open. They're also responsible for enforcing some 20 whistleblowing statutes. So this was the first, and we cite some on page 39 in our brief. There's a bunch more. Those are all enforced by OSHA. And this is an agency that has one inspector per 60,000 employees, 2,200 inspectors for 8 million workplaces. So to the extent that the reasoning in Allen and in Cannon that the statutory promise would remain unfulfilled without the private right applies today, it is certainly more the case now than it was in 1980. And I'm happy to rest on my briefs with respect to race judicata and the pretext stuff, but I'll also answer questions. All right. If there are no questions, we'll give you some time and reply. Okay. Thank you. Just a final word on the private right before I sit down. Rather than shrugging off some textual precondition, which I know is a concern in the Fay case in reading this statute, inferring a private right is the only way to give effect to every textual choice made by Congress in 11C. And again, they were making these choices in an era where the backdrop was to give effect to the remedy needed to protect the right. The right couldn't be more clearly enunciated, and its placement in judicial review and the notice provision especially show that Congress intended employees to be able to directly vindicate this protection. All right. Thank you. Good morning. Good morning, Your Honor. May it please the Court. I think it's interesting to note that the friend of the Court, and my friend as well, indicated that basically the legislative history was silent with respect to this issue. And after court, when Cannon came out, the linchpin in Cannon is the fact that it was explicitly found in the legislative history that Title IX was modeled after Title VI. Congress knew that Title VI was already found to have an implied right of action, ipso facto, and a right of action existed. And I think before we get to the private right of action, three years ago, a panel of this Court, Judge Henderson and Judge Kavanaugh were on this panel, indicated that there is no private right of action in a case between appellant and appellee. And that case is what we believe controls with respect to the res judicata issue. Appellant filed a claim, which is now before the Court, alleging multiple causes of action. One was OSHA retaliation. One was a private retaliation claim, because there was no private right of action, as every Court who has ever looked at the issue held. Mr. Appellant, undeterred, filed another litigation in the same Court, alleging OSHA retaliation against my client, the appellee. That case was dismissed, because there's no private right of action. That case was appealed to this Court. This Court affirmed. Mr. Appellant asked... It was dismissed. I think it looked like it was dismissed pretty quickly. Yes. Yes, Your Honor. When I look at the docket, I didn't even see service of the defendant. That is correct. It was, I believe... Is that sufficient for a claim preclusion, when you haven't had any service of the defendant? Does that count as a full and fair opportunity to litigate for purposes of a claim preclusion? We believe it does. I mean, I think... For cases? Well, the four standards with respect to, you know, claim preclusion, I think shows that he had an opportunity to litigate the case. Court made a ruling. The same parties were in that ruling. The case was... I'm just curious about whether full and fair litigation includes a spia sponte dismissal without even service of the other side. Well, you know... What other cases are you aware of? There are no cases that I'm aware of on that particular issue. I think it's rather unique because if interstate was served, it is likely that interstate may have argued that this claim was precluded by the prior claim or it should be stated... That would present my question. Excuse me? That would not present the question I'm raising now. It would have been served and litigated it and briefed and argued it or... That's correct. I mean, it's rather unique that it would be sua sponte before service where a motion was made informal that was granted and it went through. But be that as it may, a panel of this court said that there's no private or additive action and affirmed the district court's ruling. From your perspective, you've presented two arguments on which you think you prevail. One is res judicata. One is the merits of this right of action issue. As for you and your client, does it matter as between the two? Of how they prevail? Yeah. Not at all, of course. You're obligated to do one first person. Well, I think the court may be obligated to look at res judicata first, only... It's not jurisdictional. That is true, but I think traditionally courts have looked and determined whether or not there would be a preclusion. But no, it does not matter... You have a client that probably has more of an institutional interest in the OSHA issue than the res judicata issue. I wholeheartedly agree, Judge Mullen. And I also think that there's a third reason why my client prevails, and that's because there's no evidence in the record at all that the honest and reasonably held belief given by the decision maker under sworn declaration was not honest and reasonable. They point to evidence. For example, he left at 1.30, and the whole fight was about who cooked the dinner. You didn't come forward with any evidence that said the dinner cooker cooks dinner at noon before they leave at 1.30, and there was evidence about lack of an investigation and evidence that the initial report didn't point to him at all just a few days later. Again, I'm not saying who's got the right story at all here. Just for purposes of summary judgment, is there a disputed question of fact? Why doesn't that evidence count? Well, we actually... It's not evidence. What was before the district... Why isn't, I left at 1.30, so I couldn't have cooked dinner, and you offered no counter answer to that. Why isn't that acutely relevant? Well... Sure, and I understand your question, because I think the focus point from a appellee's perspective, and what the court focused on, is what Ms. Peters knew. She doesn't deny that there wasn't actually any investigation as to why they thought it was he that did it. And so I'm focusing on the requirement is that it be reasonable and honest and reasonably, is what you said. And I'm questioning whether that standard can be met on this evidence you brought. Well, and I... Just for purposes of summary judgment. And I understand your question. She doesn't deny those things. But she doesn't affirmatively say, I knew he left at 1.30. I... What he said... What Ms. Peters doesn't... How can it be a reasonable belief someone did it without knowing whether they were there? Is it reasonable for me to think someone did it without inquiring whether they were there at the relevant time? Is that reasonable? It may not be, but Ms. Peters was not the one that did the investigation. Ms. Peters had Mr. Wolfe and another employee, Mr. Rickling, who completed the investigation. Mr. Rickling deceased shortly thereafter. Mr. Wolfe reported to Ms. Peters that Mr. Johnson was the one that cooked the chicken. Sure, but then there's all kinds of evidentiary disputes about that. And you can't... We have a cat's paw decision. You can't sort of wander the problems through somebody out of ignorance. That doesn't make it reasonable to be... Right. You have to say why you think it's him. Well, yes, and we don't... It is true there's nothing before the record, no evidence on the record that says what the discussions were, how many... What was the investigation, how many people were interviewed, how many people were... We can't figure out what evidence is in the record that led her to believe that he was the one that did it, given that he left. It seems to be undisputed on this record. Correct. Whenever you need to dispute another time. But on this record, that he left at 1.30. That he... I'm sorry. That he left that day at 1.30. Yes. It was a dinner issue. Correct. It was an evening meal issue for an employee. Right. Evening. Yes. And there's nothing... It's a long way away from evening. Yes. In my household, though, I mean, I eat food at dinnertime that was made at lunchtime, and that happens. Now, there's nothing in the record that points to that's the typical thing that happens or people eat... In a restaurant. Or in a restaurant. But again, these are co-workers at the hotel. I'm not even... Mr. Peterson, who was a co-worker, I'm not even sure was actually a restaurant employee as opposed to another hotel employee. But the key here is that there's... Ms. Peters testified under oath that she was told Mr. Johnson was the one that cooked the chicken at issue. She also knew that... Does the person who told her that have a reasonable belief? Well, again, we don't know what Chef Wolf believed. He swore under oath that he made the determination, he did the investigation, and that there was no discriminatory intent, there was no retaliatory intent. And this is conclusively saying that we think it was him and it wasn't discriminatory. That can't... It would be dangerous for us to adopt as her absolving liability, getting past summary judgment on these types of discrimination. Well, again, I think we have to focus on what the district court had before her, which was four declarations from interstate former employees or employees indicating that an investigation was done, that Mr. Johnson was found to be the one that cooked the chicken, that Mr. Johnson had 12 or 13 prior other food and sanitary issues. And when read in that context with no countervailing evidence other than argument made in brief by the appellant and a time card showing that he left at 1.30, which we don't... But he had evidence from medical reasons why at least one of those things he'd been blamed for, leaking chicken in a sink, he couldn't have done too. He did more than just a time card. He questions... He alleged that a lot of... He pointed out that a lot of these things weren't signed and so... I mean, he's brave. Again, I'm not expressing any view on the merits, but the question here is, has there been enough questions raised? This is just... Can't be decided whether it was a reasonable investigation or a... From his viewpoint, I'm not ascribing it to you, but from his viewpoint, a targeted discriminatory investigation that really had no meat behind it. And again, I do understand your question, but I think it goes to what the district court had at that time and what the district court had was four sworn statements, a record, a litany of food handling issues. You identified one issue where he couldn't have... He says he couldn't have lifted the chicken into the can. He identified that some of them weren't signed. Right for your litany. I think none of them were signed, and part of that was he admitted he couldn't see them because he was partially blind or legally blind. I mean, again, that doesn't mean that that didn't happen. And the real issue here is what Ms. Peters knew at the time the decision was made. And if you look at the arguments that Mr. Johnson made and you treat that as evidence, for example, I didn't cook the chicken and we want to focus on that, although below we said that that wasn't the issue. The real issue is just what Ms. Peters said. He, in those same pleadings, argued that the real reason why he was fired is because he reported his superior with respect to treatment of other employees, and that's JA573. He also said he was fired because of retaliation for workers' compensation claims. That's JA565 and 569. Or maybe because he was black, and that's JA559. He also said it was because of his age at 566 and 567. So, again, there's no evidence, and the key here is causation as well. I mean, linking the termination to some sort of protected right, assuming that res judicata doesn't apply, assuming that this court finds that OSHA, there is a prior right of action, or if we're just focusing on the EEOC charge, there's a six-month or seven-month gap, depending on what protected activity we're looking at, and there's nothing indicating that this has anything to do with any of that. And I know I'm a little bit over if anybody else. All right, thank you. Thank you very much. Does Ms. Deutsch have any time? All right, why don't you take a couple minutes? Thank you. Thanks very much. First, on the legislative history, all that would be needed would be an express denial of a private right, which we don't have, and Cannon actually had legislative history going both ways, including a rejection of a request by Senator Keating to include an express private right, and that was enough. On res judicata, in addition to all the reasons we briefed, and we briefed issue preclusion precisely because claim preclusion doesn't even apply because interstate is not a party. It was never served. That's Section 34 of the restatement, so they're not entitled to the benefits of res judicata, and apologies for not spelling that out as clearly, but issue preclusion and the first-in-time rule is there precisely to avoid the kind of mess that happened here. The best reading of Judge Berman-Jackson's dismissal is a preclusion dismissal. Yes, she may have endorsed the merits ruling in her sua sponte, same-day, non-serving interstate dismissal, but that case should have been dismissed on res judicata or issue preclusion cards at the outset. I won't go more into that. I think there are many, many ways of disposing of the res judicata. With respect to pretext, a few things. The magistrate judge wrongly says at 650 that Vanessa Peters personally investigated this. She did not. She took Spencer Wolf's word. He's a biased actor. As Judge Millett noted, it's an unsupported statement. The bottom line is throughout this litigation, Interstate has not been able to come up with a simple, coherent, unshifting story about how it was possible for Mr. Johnson to prepare the evening meal when he left at 130. And there are, I don't, I, You keep mentioning that. I don't see why, I mean, customers eat meals at restaurants that were prepared that morning. You know when you order a steak or something, it takes five minutes that it's been cooked and they're heating it up. So I don't, the gap, I guess, if there is one, is that Interstate didn't say, we always prepare the staff meals by noon or something like that. That's one of the gaps. And also the fact that they mention an investigation but then put nothing, they say there's a report, the report's not there. If you look at JA 515, that's the most contemporary in this write-up of the dinner incident. And in that, it's very odd because they don't, the write-up says, specify what the employee action was that gave rise to this discipline. They don't say that. They just say, oh, Robert should do a better job about food safety. Then they say that there will be a suspension. There wasn't. And then they say, if there's an investigation, fill in the details of the investigation. There's nothing filled in on the investigation. So Mr. Peter Peterson, I confused Peterson, Peterson, the employee who ate the meal said he notified Interstate immediately. This sort of vague write-up comes over a week after that. And there's also the fact that Interstate's own story of what happened in its pleadings changed. So they started in the motion to dismiss saying that he served the meal. And then they switched to he prepared it or cooked it. They seemed to use those interchangeably. And then by the end, they have the Brady standard, which, of course, is the correct legal standard, that it doesn't really matter what happened as long as there was an honest and reasonable belief. But there is no basis for any belief at all beyond the unsupported word of the biased actor here. As for causation, we have the timeline of events set out in our brief. And I think the most interesting one is the fact that within 30 days of filing the OSHA complaint, he received his first severe disciplinary action, which was the three-day suspension. And then there's an escalating pattern in the period thereafter leading up to his termination. So to the extent we're talking about this, we're talking about his EEOC complaint, not an OSHA one. But is the fact that he first started getting serious trouble at work 30 days after an OSHA complaint, does that factor into our analysis of whether there's a text or something on there? Right. I'm not sure what to do with that. It's hard to disentangle because they're intertwined in his allegations and in his pleadings, and arguably they could be supporting. So if you find the private right of action on the OSHA claim, then it gets remanded. He gets to make more of a record on that claim. There's a lot of gaps in the record on that. And then presumably we'll go to the jury on both, and he would be entitled to prove to the jury that one or the other are the combined effect for the real reason for his firing and not the plastic chicken. All right. Ms. Deutsch, you were appointed to represent the plaintiff, and you've done a superb job. I want to detain you for just one second because Professor Goldblatt is usually here, and he and I have the same unfortunate past of having a terrible fall. I just want to make sure he's okay. Oh, he's doing very well, yes. He is in Richmond because my co-fellow, Sean Hopwood, is having his first argument there today in front of the Fourth Circuit. Good. Well, that's good news. Thank you. Thank you.
judges: Henderson, Kavanaugh, Millett